UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-22444-RAR

**PETER A. GATLYN**,

    Plaintiff,

v.

**SENIOR CHAPLAIN JOHN DOE**, *et al.*,

    Defendants.
_____/

**ORDER DISMISSING COMPLAINT IN PART
AND ALLOWING COMPLAINT TO PROCEED IN PART**

**THIS CAUSE** comes before the Court on Plaintiff's *pro se* civil rights Complaint filed under 42 U.S.C. § 1983. *See* Complaint ("Compl."), [ECF No. 1]. Plaintiff alleges that Defendants, four employees of the Florida Department of Corrections, have violated his rights under both federal and Florida law by refusing to provide him with kosher meals even though he is a practicing Orthodox Jew. *See id.* at 1. After careful review, the Complaint shall **PROCEED in part** and be **DISMISSED in part**.

**FACTUAL ALLEGATIONS**[1]

On June 9, 2022, Plaintiff was incarcerated in the Miami-Dade County Jail after being arrested by Miami-Dade County and Miami Beach law enforcement officers. *See id.* ¶ 9. Plaintiff is a practicing Orthodox Jew who consumes kosher meals in accordance with the halachic guidelines of the Torah. *See id.* ¶ 29. Plaintiff asked for, and received, a kosher diet "the entire

---

[1] Since the screening standard under § 1915A is functionally similar to the "failure to state a claim standard" under FED. R. CIV. P. 12(b)(6), the Court will assume all of the factual allegations in the Complaint are true. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). The parties should not interpret the Court's recitation of the factual allegations in the Complaint as a comment on their veracity.

time he was housed at the county jail." *Id.* ¶ 10. Plaintiff was eventually sentenced to eight years in the custody of the Florida Department of Corrections ("FDOC") and was transferred to the South Florida Reception Center ("SFRC") on October 4, 2023. *Id.* ¶ 12. Between October 4, 2023, and December 15, 2023, Plaintiff submitted several requests to receive kosher meals from FDOC's "Religious Dietary Program" ("RDP") but did not receive a response. *Id.* ¶ 13.

On December 27, 2023, the Senior Chaplain of SFRC, John Doe, visited Plaintiff and had him complete a new RDP application. *See id.* ¶ 14. Senior Chaplain John Doe then "disapproved [Plaintiff] for the RDP diet without any explanation as to why he'd made this decision." *Id.* ¶ 15. Plaintiff filed a grievance challenging this decision with prison officials on January 9, 2024, but was transferred to a new facility, Charlotte Correctional Institution ("CCI"), on January 23, 2024. *See id.* ¶¶ 16–17. Plaintiff filed a new grievance at CCI to determine the outcome of the original SFRC grievance. *See id.* ¶ 19–20. Defendant Stasney, the Senior Chaplain for CCI, denied Plaintiff's grievance, explaining that "[y]ou were disapproved [for RDP] on 12/27/2023 at your last camp. You must wait 6 months to reapply you can reapply on 6/27/2024." *Id.* ¶ 21; *see also* Informal Grievance, [ECF No. 1-1], at 3. Plaintiff appealed the denial of this grievance to Defendant Dawson and then Defendant Bowden, both of whom refused to provide relief. *See* Compl. ¶¶ 23–27. Defendant Bowden provided additional reasoning for why Plaintiff was denied a kosher diet, explaining that Plaintiff's RDP application "revealed that [Plaintiff was] unable to describe the diet that is part of your religious obligation, such as permitted or restricted foods and preparation methods." Response to Grievance, [ECF No. 1-1], at 11.

## LEGAL STANDARD

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A

(emphasis added).  The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c).  In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).  Similarly, if a plaintiff wishes to proceed *in forma pauperis* rather than prepaying the filing fee, § 1915(e)(2) requires the court to "dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Although the Court must hold the allegations in a *pro se* civil rights complaint "to a less stringent standard than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *pro se* litigants are still required to comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida, *see Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[A *pro se* litigant] is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); *see also* S.D. FLA. L.R. 1.1 (explaining the Local Rules apply

in all proceedings unless otherwise indicated and that the word "counsel" shall apply to a party that is proceeding *pro se*). The Federal Rules of Civil Procedure require, in pertinent part, that a pleading that states a claim for relief contain "a short and plain statement of the grounds for a court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought[.]" FED. R. CIV. P. 8(a). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[,]" and "each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." FED. R. CIV. P. 10(b).

## ANALYSIS

Plaintiff brings three claims against each of the four Defendants in their individual and official capacities. First, Plaintiff alleges that Defendants violated the First Amendment of the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Florida Constitution, and the Florida Religious Freedom Restoration Act ("FRFRA") by failing to provide Plaintiff with a kosher diet while incarcerated. *See* Compl. ¶ 33. Second, Plaintiff claims that Defendants' actions amount to cruel and unusual punishment in violation of the United States and Florida constitutions because, by failing to provide him with a kosher meal, he is being forced to disobey a central tenet of his religion which will cause him to "suffer eternal damnation." *See id.* ¶ 34. Finally, Plaintiff suggests that Defendants abridged his right to equal protection under the law. *See id.* ¶ 35.

After careful review, the Court will allow Plaintiff's free exercise claim against Defendant Doe to proceed but will dismiss all other claims against all other Defendants for failure to state a claim upon which relief may be granted.

### A. Improper Defendants

Based on the facts alleged in Plaintiff's Complaint, only one of the four Defendants was responsible for denying Plaintiff access to kosher meals: Chaplain Doe. *See* Compl. ¶¶ 14–15.[2] The other three Defendants, Stasney, Dawson, and Bowden, denied Plaintiff's grievances complaining about Doe's decision to deny Plaintiff's RDP application. *See id.* ¶¶ 16–27. In essence, Plaintiff is arguing that—by being given notice of Doe's actions yet still denying Plaintiff's grievances—these three Defendants ratified Doe's unconstitutional conduct.

But to state a claim against these Defendants, Plaintiff must "allege facts that associate [Stasney, Dawson, and Bowden] with [a constitutional violation]." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008). The Eleventh Circuit has held that denying a grievance, even if it allows unconstitutional conduct to continue, does not violate an inmate's constitutional rights. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011). Since Plaintiff's only factual allegations against Defendants Stasney, Dawson, and Bowden are that they denied his grievances complaining about Defendant Doe's decision, Plaintiff fails to allege that these Defendants violated his constitutional rights. *See, e.g.*, *Coleman v. Bowden*, 797 F. App'x 422, 427 (11th Cir. 2019) (holding that "[d]enying Mr. Coleman's grievance" did not state a constitutional claim under § 1983); *Jackson v. Fla. State Hosp.*, No. 20-CV-200, 2020 WL 5239116, at *2 (N.D. Fla. June 26, 2020) ("Where a state actor's role is limited to the denial of administrative grievances, or the failure to act with respect to such grievances, such state actors are not liable under § 1983 on the

---

[2] Fictitious party pleading is generally prohibited in federal court unless "the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). The Eleventh Circuit has held that this exception is met when the plaintiff "adequately describe[s] the person to be sued so that the person [can] be identified for service." *Dean*, 951 F.2d at 1215 n.6. Although Plaintiff has not provided Doe's name, he has sufficiently identified this Defendant for service by providing Plaintiff's specific and unique position (the Senior Chaplain of SFRC). *See* Compl. ¶ 4; *see also Dean*, 951 F.2d at 1216 (holding that "Chief Deputy of the Jefferson County Jail John Doe" was a proper defendant).

theory that their actions constituted an acquiescence with respect to the alleged unconstitutional conduct." (internal quotation marks omitted)), *report and recommendation adopted*, 2020 WL 5237519 (N.D. Fla. Sept. 2, 2020); *Jones v. Eckloff*, No. 12-CV-375, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied."). Accordingly, Defendants Stasney, Dawson, and Bowden must be dismissed from this action.

### B. Free Exercise/RLUIPA Claims

The Court turns next to Plaintiff's claim that, by "failing to provide Plaintiff with the RDP/CFO (Kosher) diet in accordance with his sincerely held religious beliefs," Defendant Doe is "denying [Plaintiff] the right to freely exercise his religious beliefs," in violation of the federal and Florida constitutions, RLUIPA, and FRFRA. Compl. ¶ 33. Because the standards for both Florida law and federal law are identical and coextensive in all relevant respects, the Court will limit its analysis to the First Amendment's Free Exercise Clause and RLUIPA. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1246 (11th Cir. 2019) (explaining that analysis under "the Free Exercise Clauses [of] the Florida and federal constitutions" are "identical" (citing *Warner v. City of Boca Raton*, 887 So. 2d 1023, 1030 (Fla. 2004)); *Westgate Tabernacle, Inc. v. Palm Beach Cnty.*, 14 So. 3d 1027, 1031 (Fla. 4th DCA 2009) ("[F]ederal and state courts have applied the same analysis under FRFRA and RLUIPA.").

To bring a claim under the Free Exercise Clause "a plaintiff 'must allege that the government has impermissibly burdened one of its 'sincerely held religious beliefs.''" *Cambridge Christian Sch.*, 942 F.3d at 1246 (quoting *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007)). "[A] complaint fails to state a Free Exercise claim if it does not allege that (1) the plaintiff

holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the [regulation] at issue in some way impacts the plaintiff's ability to hold that belief or act pursuant to that belief." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1256–57 (11th Cir. 2012), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The Free Exercise Clause is not violated if "government action . . . incidentally burden[s] religious practices . . . so long as [the action] is both 'neutral' and 'generally applicable.'" *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, Ala.*, 83 F.4th 922, 928 (11th Cir. 2023) (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 880 (1990)).

RLUIPA, on the other hand, provides more robust protections than the Free Exercise Clause. To state a claim under RLUIPA, the plaintiff must first allege "that a government rule, regulation, practice, or policy substantially burdens his exercise of religion." *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022) (citing 42 U.S.C. § 2000cc-1(a)). A plaintiff's religious exercise is "substantially burdened" when "the government's denial of a particular religious item or observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007). If the plaintiff makes this *prima facie* case, the burden will shift to the defendant to prove "that the challenged directive is the 'least restrictive means of furthering a compelling government interest.'" *Dorman*, 36 F.4th at 1313 (quoting *Ramirez v. Collier*, 595 U.S. 411, 425 (2022)). Since RLUIPA "provides greater religious protection than the First Amendment[,]" a plaintiff who fails to state a claim under RLUIPA will also fail to state a claim under the Free Exercise Clause. *Id.*

While the facts alleged present a close call, the Court ultimately finds that Plaintiff has stated a claim under RLUIPA and the Free Exercise Clause. The Eleventh Circuit has held that prisons must respect "religious dietary restrictions" under the First Amendment and RLUIPA, so

long as those beliefs are "truly held." *Hathcock v. Cohen*, 287 F. App'x 793, 801 (11th Cir. 2008) (citing *Martinelli v. Dugger*, 817 F.2d 1499, 1504–06 (11th Cir. 1987)); *see also Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007) (holding that "keeping kosher" is a religious exercise protected by RLUIPA and the First Amendment). Plaintiff alleges that he is an Orthodox Jew, and that keeping kosher is both a central tenet of his religion and a sincerely-held belief. *See* Compl. ¶¶ 29, 31. However, federal courts have also held that prisons can still <u>refuse</u> to provide kosher meals to an inmate—without violating the First Amendment or RLUIPA—<u>if there is a legitimate penological reason for doing so</u>. *See Baranowski*, 486 F.3d at 125–26 (holding that denying an inmate kosher meals did not violate RLUIPA because "this policy is related to maintaining good order and controlling costs"); *Muhammad v. Sapp*, 388 F. App'x 892, 898–99 (11th Cir. 2010) (same, but for "Islamic dietary accommodations"); *Linehan v. Crosby*, No. 06-CV-00225, 2008 WL 3889604, at *10–11 (N.D. Fla. Aug. 20, 2008) (finding that "having to provide a kosher diet to Plaintiff" would be too costly and "create a significant security risk"); *see also* Fla. Admin. Code. R. 33-503.001(13)(a)–(c) (allowing FDOC officials to ignore "religious dietary laws" if "providing a special diet would" exceed "budgetary allowances," "create a threat to security," or "amount to unjustified special treatment of inmates").

In this case, however, Plaintiff specifically alleges that Defendant Doe "told Plaintiff that he was disapproved for the RDP diet without any explanation as to why he'd made this decision." Compl. ¶ 15.[3] Put another way, there is no compelling government interest—or even a rational basis—for denying Plaintiff kosher meals. Although Plaintiff can purportedly request a kosher diet again in June 2024, being deprived the ability to keep kosher for more than six months

---

[3] Defendant Bowden's response to Plaintiff's grievance indicated that Defendant Doe did not provide Plaintiff with a kosher diet because Plaintiff's RDP application was deficient. *See* Compl. ¶ 27; Response to Grievance, [ECF No. 1-1], at 11. That said, taking everything in the Complaint as true, the Court must still presume that there was not a legitimate reason given for denying Plaintiff's request for a kosher diet.

(standing alone) constitutes a significant burden on Plaintiff's ability to freely exercise his religion. *See Hathcock*, 287 F. App'x at 801; *Baranowski*, 486 F.3d at 124.  Since there does not appear to be a rationale—compelling or otherwise—for denying Plaintiff kosher meals, the Court finds that Plaintiff has stated a claim against Defendant Doe under the Free Exercise Clauses of the federal and Florida constitutions, RLUIPA, and FRFRA.

### C.  *Cruel and Unusual Punishment Claim*

Next, Plaintiff advances a unique claim under the state and federal constitutional provisions prohibiting the infliction of cruel and unusual punishment.[4]  Plaintiff alleges that, by failing to keep kosher, he is no longer "obeying G-d's commands in Leviticus Chapter 11 Verses 1–47 and Deuteronomy 14 Chapter 14 Verses 3–21" and that Defendant Doe has now condemned Plaintiff to "suffer eternal damnation in Sheol because he is in a sense forced to sin[.]"  Compl. ¶ 34.  To bring an Eighth Amendment claim based on "cruel and unusual punishment," Plaintiff must "prove that the condition he complains of" is sufficiently "extreme" and "poses an unreasonable risk of serious damage to his future health or safety" <u>and</u> that the defendant was deliberately indifferent to that condition of confinement.  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

But "a claim of failure to accommodate religious dietary needs arises under the First Amendment and not the Eighth."  *Freeman v. Sample*, No. 16-CV-120, 2018 WL 11216972, at *5 (M.D. Ga. June 1, 2018) (citing *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011)).  That is because Eighth Amendment claims cannot be brought unless an inmate shows that his jailers exercised more than a "de minimis use[ ] of physical force" against him.  *Hudson v. McMillian*, 503 U.S. 1, 10 (1992); *see also Sconiers v. Lockhart*, 946 F.3d 1256, 1265–66 (11th Cir. 2020)

---

[4] The Florida Constitution's prohibition on "cruel and unusual punishment" must be "construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment of the United States Constitution."  FLA. CONST. art. I, § 17; *accord Lawrence v. State*, 308 So. 3d 544, 548 (Fla. 2020).

(same). The only injury Plaintiff alleges is spiritual: a hypothetical and esoteric threat to Plaintiff's soul in the afterlife. *See* Compl. ¶ 34. Such an injury can be redressed only through rabbinical authorities—not the Eighth Amendment. *See Perez v. Westchester Cnty. Dep't of Corr.*, No. 05 Civ 8120, 2007 WL 1288579, at *5 (S.D.N.Y. Apr. 30, 2007) ("Plaintiffs have not and cannot provide any authority for the proposition that denial of [halal and kosher meat] in prison would rise to the level necessary to be deemed cruel and unusual under the Eighth Amendment." (cleaned up)); *Spencer v. Whorton*, No. 07-CV-00635, 2010 WL 6001593, at *18 (D. Nev. Nov. 18, 2010) ("While the court recognizes that religion is critically important to many individuals' personal emotional and spiritual health and well-being, the court is unwilling to construe allegedly abridged religious practice as denial of a basic life necessity for the purposes of the Eighth Amendment."), *report and recommendation adopted in part*, 2011 WL 846066 (D. Nev. Mar. 7, 2011); *see also Walton v. Johnson*, 440 F.3d 160, 179 (4th Cir. 2006) (Wilkinson, J., concurring) ("Judges called upon to interpret the Eighth Amendment may not engage in metaphysical inquiries under the guise of constitutional interpretation."). The Court shall **DISMISS** the cruel and unusual punishment claim.

### D. Equal Protection Claim

Finally, Plaintiff alleges that Defendant Doe's actions also violated his "rights to equal protection" under the federal and Florida constitutions. Compl. ¶ 35.[5] To bring an equal protection claim, Plaintiff "must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir.

---

[5] As with all of Plaintiff's claims, the standard for proving an equal protection violation under Florida law is effectively identical to the federal standard. *See Sasso v. Ram Prop. Mgmt.*, 431 So. 2d 204, 212 (Fla. 1st DCA 1983) ("[The framers and adopters of our state constitution] intended that the Florida equal protection clause operate in a manner similar to the [F]ourteenth [A]mendment.").

2001).[6] Plaintiff has not met either element. First, Plaintiff never alleges that that he was treated differently by Defendant Doe in comparison to other similarly situated inmates. *See generally* Compl. "If the plaintiff has not been treated differently than a similarly situated comparator, no Equal Protection violation exists." *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1203 (11th Cir. 2019). Second, although Plaintiff claims that he requested kosher meals because of his Jewish faith, he never suggests that Defendant Doe denied that request <u>because</u> Plaintiff is Jewish. *See Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1319 (11th Cir. 2006) ("More basically, Sweet's equal protection claim fails because he has not alleged, let alone established, that he was treated differently on account of some form of invidious discrimination tied to a constitutionally protected interest.").

Nor can Plaintiff save his equal protection claim under a "class of one" theory. "The Supreme Court has recognized the Equal Protection Clause is implicated in 'class of one' claims 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Again, though, Plaintiff has not "present[ed] a single instance in which a similarly situated [inmate]" was treated differently by Defendant Doe, so he also cannot bring a "class of one" equal protection claim. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007). Thus, Plaintiff's equal protection claim must be **DISMISSED**.

---

[6] Since Plaintiff alleges that he is an Orthodox Jew, he has demonstrated that he is a member of a class protected by the Equal Protection Clause. *See Alford v. Consol. Gov't of Columbus, Ga.*, 438 F. App'x 837, 839 (11th Cir. 2001) (holding that "race, religion, sex, or national origin" are protected classes).

### E. *Leave to Amend*

If a plaintiff fails to set forth a legally sufficient claim for relief, either because the complaint lacks sufficient factual support or because the complaint fails to comport with the appropriate procedural rules, its usefulness is substantially diminished. Still, a *pro se* litigant must generally "be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court finds that Plaintiff's claims against Defendants Stasney, Dawson, and Bowden, as well as his "cruel and unusual punishment" claim, should be dismissed with prejudice because amendment would be futile. *See id.* As discussed above, the Court finds that "the complaint as amended would still be properly dismissed" as it relates to these Defendants and claims. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Conversely, the Court recognizes that Plaintiff's equal protection claim could be amended to state a claim <u>if</u> Plaintiff can allege facts showing that Defendant Doe treated other similarly situated inmates differently (and more favorably) than Plaintiff and that Defendant Doe treated Plaintiff differently because he is Jewish. *See Jones*, 279 F.3d at 946–47. If Plaintiff wishes to file an amended complaint to state this equal protection claim (assuming that he can plausibly allege the necessary facts), he must do so in accordance with FED. R. CIV. P. 15(a) and Rule 15.1 of this Court's Local Rules.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Complaint, [ECF No. 1], shall **PROCEED** against Defendant John Doe in his individual and official capacities, but only as to the free exercise claim Plaintiff raises in paragraph 33 of the Complaint. The Court will order the U.S. Marshals Service to serve the Defendant in a separate Order.

2. Plaintiff's cruel and unusual punishment claim against Defendant John Doe is **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915A. Plaintiff's equal protection claim against Defendant John Doe is **DISMISSED without prejudice**.

3. All other claims against all other Defendants are **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915A. The Clerk is instructed to **TERMINATE** Defendants Stasney, Dawson, and Bowden from the docket.

4. Plaintiff's Motion for Leave to Proceed *in forma pauperis* [ECF No. 3] is **GRANTED** to the extent that Plaintiff need not prepay even a partial filing fee in this case, or prepay costs, such as for service of process. Plaintiff owes the United States a debt of $350.00 which must be paid to the Clerk of Court as funds become available. The prison having custody of Plaintiff must make payments from the prisoner's account to the Clerk each time the amount in the account exceeds $10.00 until the full filing fee of $350.00 is paid. The Clerk is **DIRECTED** to serve a copy of this Order on the Florida Department of Corrections' Inmate Trust Fund Account Department and this Court's Financial Department.

**DONE AND ORDERED** in Miami, Florida, this 28th day of June 2024.

_____
RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE